Joseph Parker, Appellant, *v*. The Elmira, Cortland and Northern Railroad Company, Respondent.

1. Constitutional Law — Special Act Authorizing Extension of Railroad and Embracing Regulation as to Rate of Fare. A private and local statute entitled an act to authorize a railroad company to extend its road is not obnoxious to the constitutional requirement (Art. 3, § 16) that such a bill shall not embrace more than one subject and that shall be expressed in its title, because it contains a provision regulating the maximum rate of fare which the railroad may charge per mile.

2. Chapter 594, Laws of 1872, not Repealed by General Railroad Law. The special statute known as chapter 594 of the Laws of 1872, a provision of which authorizes the Utica, Ithaca and Elmira Railroad Company to charge fare at the rate of four cents per mile, was not repealed by the General Railroad Law (L. 1890, ch. 565).

3. Railroads — Special Statutory Provision as to Fare — Property Right. The right of a railroad to charge fare at the rate of a specified sum per mile, secured to it by a special act, is a privilege or franchise in the nature of property, is alienable or transferable by mortgage, and is not lost by a transfer of the road, on foreclosure sale, to natural persons who act as the conduit for transmitting the property to another cor-

poration, and the subsequent consolidation of the railroad into a general
system does not impair the right of the consolidated company to charge
upon the constituent line the rate of fare authorized by the original act.

*Parker* v. *Elmira, C. & N. R. R. Co.*, 27 App. Div. 383, affirmed.

(Argued November 22, 1900; decided January 8, 1901.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered April
13, 1898, affirming a judgment in favor of defendant entered
upon a dismissal of the complaint by the court on trial at Cir-
cuit without a jury.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Hull Greenfield* for appellant. Corbin and Maxwell could
not take, as individuals, the private rights and franchises of the
Utica, Ithaca and Elmira Railroad Company, nor could they,
as individuals, convey the same to the defendant. (*Shiels* v.
*Ohio*, 95 U. S. 319; *People* v. *O'Brien*, 111 N. Y. 47; *Fisher*
v. *N. Y. C. & H. R. R. R. Co.*, 46 N. Y. 644; *Purdy* v. *E.
R. R. Co.*, 162 N. Y. 42.) The special law relied on by the
defendant to defeat a recovery had been repealed by the
General Railroad Law of 1890, as amended by the law of 1892,
which established a uniform rule for all the railroads of the
state. (*Matter of Dobson*, 146 N. Y. 357; *Beardsley* v. *N.
Y., L. E. & W. R. R. Co.*, 15 App. Div. 251; *Dillon* v. *E.
Ry. Co.*, 43 N. Y. Supp. 320; *People* v. *Jaehne*, 103 N. Y.
182; *Heckmann* v. *Pinkney*, 81 N. Y. 211; *People* v. *G. &
S. T. Co.*, 98 N. Y. 67; *City of Buffalo* v. *Neal*, 86 Hun,
76; *Harrington* v. *Trustees*, 10 Wend. 547; *Johnson* v. *H.
R. R. R. Co.*, 49 N. Y. 455; *H. G. L. & C. Co.* v. *City of
Hamilton*, 146 U. S. 258.) The defendant never had any
legal right to charge four cents per mile, chapter 594 of the
Laws of 1872, the law under which they claimed the right to
charge four cents per mile, being unconstitutional and void.
(*S. M. Ins. Co.* v. *Mayor, etc.*, 8 N. Y. 241; *Town of Fish-
kill* v. *F. & B. P. Co.*, 22 Barb. 634; *Johnston* v. *Spicer*,
107 N. Y. 185; *People* v. *Hills*, 35 N. Y. 452.)

*D. W. Van Hoesen* for respondent.   Chapter 594 of the Laws of 1872 gave to the Utica, Ithaca and Elmira Railroad Company the legal right to charge a fare not exceeding four cents per mile, and that right was a franchise which passed to and became the property of the defendant, the Elmira, Cortland and Northern Railroad Company, as entitled and enacted, and did not violate any of the provisions of the Constitution. (*Fort* v. *Cummings*, 90 Hun, 485 ; *Perkins* v. *Heert*, 158 N. Y. 306 ; *Astor* v. *Arcade Ry. Co.*, 113 N. Y. 93 ; *Sweet* v. *City of Syracuse*, 129 N. Y. 316 ; *Wilcox* v. *Baker*, 22 App. Div. 299.)   The right to charge a fare not exceeding four cents per mile was a franchise which could be and was legally transferred to the defendant and became its property.  (*Morgan* v. *Louisiana*, 93  U. S. 217 ; *People* v. *O'Brien*, 111 N. Y. 41 ;  *People* v. *B., F. & C. I. Ry. Co.*, 89 N. Y. 75.)  Section 5 of chapter 594 of the Laws of 1872 has not been repealed, either expressly or by implication.  (*People* v. *Koenig*, 9 App. Div. 438 ; *B. C. Assn.* v. *City of Buffalo*, 118 N. Y. 61 ; *Matter of Dobson*, 146  N. Y. 357 ; *People ex rel.* v. *Bd. Suprs.*, 40 Hun, 353; *Beardsley* v. *N. Y., L. E. & W. R. R. Co.*, 15 App. Div. 251 ; *McKenna* v. *Edmunstone*, 91 N. Y. 234 ; *Gilman* v. *Tucker*, 128 N. Y. 190 ; *Purdy* v. *E. R. R. Co.*, 162 N. Y. 48 ; *People* v. *O'Brien*, 111 N. Y. 1.)

O'BRIEN, J.   This is an action to recover the penalty of fifty dollars and also seven cents excessive fare which it is claimed accrued to the plaintiff under section thirty-nine of the Railroad Law, which enacts that " Any railroad corporation which shall ask or receive more than the lawful rate of fare, unless such overcharge was made through inadvertence or mistake, not amounting to gross negligence, shall forfeit fifty dollars."

The defendant is a railroad corporation, created under the statute, and by the consolidation and merger in it of various other railroads.   It is the result of other and earlier consolidations of small railroads under names slightly different.   It claims to be vested with the rights and privileges that any of the railroads which now constitute its entire system pos-

sessed by law before they were consolidated and finally merged in the defendant.

The legal rate of fare which the defendant was entitled to charge passengers in its cars is three cents per mile, unless, as it contends in this case, it may charge more under some existing special law applicable to one or more branches of the system. On the 25th day of February, 1895, the plaintiff took passage and was a passenger on the defendant's railroad from Freeville to Cortland and was charged as fare at the rate of nearly four cents per mile, that being the rate usually asked and received from passengers between those stations. The excess paid by the plaintiff, beyond what it is claimed was the legal rate between those points, was seven cents. The defense to the action was that the defendant had statutory authority for the charge made, and violated no law; but that if there was in fact any overcharge it was made through inadvertence and mistake, not amounting to gross negligence. At the trial the complaint was dismissed, and the plaintiff excepted, and the judgment entered on that decision has been affirmed on appeal.

The case depends largely, if not entirely, upon the question whether a private and local statute known as chapter 594 of the Laws of 1872 was validly enacted and in force at the date when it is alleged that the overcharge of fare was demanded and received by the defendant from the plaintiff. The title of the act is " An act to authorize the Utica, Ithaca and Elmira Railroad Company to extend their road and to confirm their purchase of a portion of the roadbed of the Lake Ontario, Auburn and New York Railroad and for other purposes." The statute confers various powers upon the Utica, Ithaca and Elmira Railroad Company, and among other things, by the fifth and last section, to charge a fare not exceeding four cents per mile. That railroad is now a part of the defendant's system by and through various consolidations and *mesne* conveyances, the proceedings culminating in that result not being questioned in any form, except as to the point which will be referred to hereafter. If that act is still in force, then the defendant had the lawful right to charge the sum demanded.

and received from the plaintiff. It is attacked, however, on two grounds. (1) On the ground that the act violates that provision of the State Constitution which forbids the passage of any private or local bill embracing more than one subject expressed in the title. (2) That even if the act was originally valid it has been repealed by implication in the revision of the statutes which resulted in the present General Railroad Law. The statute provides for the use and care by the railroad of parts of the general canal system of the state in which the entire public had an interest, but for the purpose of the objection it may be assumed that the act was private and local. We think, however, that the statute contains nothing that is not fairly expressed in the title. An act to extend the road sufficiently expresses in the title everything contained in the five sections. The regulation of the rate of fare which a railroad may charge, and the designation of the maximum per mile, is germane to the subject of the act expressed in the title, which was an act to authorize a designated railroad to extend its road. The extension of the road was the real subject expressed, and all the rest may be regarded as surplusage. The rate of fare which might be charged when the road was extended, as described in the act, was not foreign to the subject expressed in the title, and, hence, there was no violation of either the letter or the spirit of the Constitution. (*Astor* v. *Arcade Ry. Co.*, 113 N. Y. 93 ; *Sweet* v. *City of Syracuse,* 129 N. Y. 316; *Perkins* v. *Heert,* 158 N. Y. 306.)

We do not think that this special act, applicable only to a particular railroad, was repealed by the enactment of the present general law. That law is not general in the sense that it provides for a uniform rate of fare applicable to all railroads. It classifies railroads according to mileage, elevation of grade, date of incorporation and otherwise, and fixes the rate of fare that may be lawfully charged by each class, ranging from ten cents down to two cents per mile (§ 37), and then concludes in these words: " Nor shall any consolidated railroad corporation charge a higher rate of fare per passenger per mile, upon any part or portion of the consolidated

line, than was allowed by law to be charged by each existing corporation thereon previously to such consolidation." The defendant is a consolidated railroad. That part of its line between Freeville and Cortland was allowed by law to charge four cents per mile, at least prior to the enactment of the general law. The prohibition against charging *more* would seem to be unnecessary if the lawmakers supposed that it was embraced within the three-cent limitation. The implication is reasonable that on the part of the defendant's line covered by the act of 1872 the maximum rate of fare should not be increased, but could remain as specified in that act. There is no express repeal of the statute, and a repeal by implication is not to be favored. The general rule of construction in such cases is that a special statute, providing for a particular case, or applicable to a particular locality, is not repealed by a general statute, unless the intent to repeal or alter the special law is manifest, although the terms of the general law would, taken strictly, and but for the special law, include the case or cases provided for by it. (*Buffalo Cemetery Association* v. *City of Buffalo*, 118 N. Y. 61.) When by any reasonable or fair construction two such enactments can be made to work together, and each can be made to accomplish a different and independent result, a special or local statute will not be affected by a subsequent general law relating to the same subject. (*Matter of Dobson*, 146 N. Y. 357; *McKenna* v. *Edmundstone*, 91 N. Y. 231; *Casterton* v. *Town of Vienna*, 163 N. Y. 368.) When the subsequent general law is a revision of the prior laws, as in this case, the implication of a repeal may be stronger; but here there is affirmative evidence on the face of the general law to show that no repeal was intended. There was attached to the general law, as originally enacted (Laws of 1890, ch. 565), a schedule of all laws or parts of laws repealed, covering a period of over fifty years, and although that schedule enumerates two other statutes passed in the same year as the private and local act in question, no reference was made to that act or any part of it. This is a very clear indication of the pur-

pose of the lawmakers to allow it to remain intact. Moreover, there were very weighty reasons why this local and special statute should have been exempted from any express or implied repeal contained in or arising from the enactment of the general law, since it contained what was, in legal effect, a grant by the state to the railroad of the right to use state property, which was formerly a part of the canal system, for a portion of the roadbed and for the operation of the railroad, upon certain conditions and obligations specified. To repeal the law conferring such rights would be, in effect, to withdraw the grant so far as the state had the power to do so, and thus affect the title of the railroad to a part of its property. The section prescribing the rate of fare was, of course, subject to repeal, but was allowed to stand with the rest of the statute. The legislature evidently intended to avoid any conflict with the constitutional restriction which forbids the enactment of any law impairing the obligation of contracts. This restriction may be violated by the repeal of a law upon which the right or obligation secured by the Constitution rests, and which is necessary to the enforcement of the contract or the enjoyment of the property right which it may confer. (*People ex rel. Reynolds* v. *Common Council*, 140 N. Y. 300; *McGahey* v. *Virginia*, 135 U. S. 662.)

It is, therefore, quite clear that the special act authorizing the railroad to charge four cents per mile has not been repealed. That this right was a privilege or franchise in the nature of property which vested in the corporation and until repealed is entitled to the same protection from invasion as any other species of property, cannot be doubted. (*People* v. *O'Brien*, 111 N. Y. 1; *Beardsley* v. *N. Y., L. E. & W. R. R. Co.*, 162 N. Y. 230; *Gilman* v. *Tucker*, 128 N. Y. 190.) It was alienable, or transferable by mortgage, and passed with the property to the purchaser under the judgment in foreclosure, and through the several conveyances and consolidations was transmitted to the defendant. The fact that at the sale of the railroad under the foreclosure judgment in March, 1884, the property was conveyed to two individuals,

does not affect the right in question, nor interrupt the transmission of the franchise through the succesive transfers.

Of course if the franchise to collect fare from the public was lost in that way, there is no reason that I can perceive why all the other franchises should not share the same fate. While it is doubtless true that natural persons cannot exercise the franchises which the state has conferred upon railroad corporations, there is no reason why they cannot be the conduit for transmitting them to another corporation in the manner provided by law. They may bid in the property at the foreclosure sale, including the franchises, and hold and transmit it intact to a corporation authorized to exercise them. Nothing was lost in consequence of the methods used to transmit the title.

In view of the conclusion reached concerning the questions discussed, it is quite unnecessary to give construction to that part of the General Railroad Law which relieves the corporation from liability for the penalty in cases where an overcharge is made through "inadvertence or mistake, not amounting to gross negligence." The learned counsel for the defendant insists that the language employed covers all mistakes not amounting to gross negligence, whether it be a mistake of fact or law. All that is necessary to say now is that when it becomes important to decide that question it will not be easy to show that a railroad, when sued for the statutory penalty, can justify the demand and receipt from the public of an unlawful rate of fare upon the plea that it was misinformed with respect to the law, or made a mistake as to its scope and application. It is generally understood, and doubtless true, that railroad corporations have at least as good facilities for acquiring knowledge of the law concerning their rights and duties as private individuals, and no good reason is apparent for exempting them from the general rule, which imputes such knowledge to all.

The judgment should be affirmed, with costs.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur; LANDON, J., not sitting.

Judgment affirmed.