(123 App. Div. 93.)

## VILLAGE OF PHŒNIX v. GANNON et al.

(Supreme Court, Appellate Division, Fourth Department.   January 8, 1908.)

1. MUNICIPAL CORPORATIONS—GRANT OF RIGHTS TO USE STREET FOR STREET RAILWAY.

> The authority to use the public streets of a municipality for railroad purposes, which is an additional burden, is a franchise proceeding from the state, and the municipality has no power in respect thereto, except such as is expressly given by statute, and then only in the manner and upon the conditions prescribed.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1459–1470.]

2. SAME.

> Railroad Law, Laws 1890, p. 1108, c. 565, art. 4, § 90, pertaining to street surface railroads, provides that the article shall apply to every corporation which has been organized to construct or operate a street surface railroad.   Section 92 (page 1109) provides the manner of obtaining the consent of local authorities to the construction of a street surface railroad.   The provisions contained in the other sections of the article are all based upon the idea that the consent or franchise must be granted, if at all, to a corporation authorized to construct and operate the railroad.   *Held*, that a municipality has no power to give a consent or franchise to an individual to operate a street surface railroad upon its streets; but the grant must be to a corporation in the manner specified by the statute.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1459–1470.]

> Spring and Robson, JJ., dissenting.

Appeal from Trial Term, Oswego County.

Action by the village of Phœnix against William P. Gannon and others.  Judgment for plaintiff (55 Misc. Rep. 606, 106 N. Y. Supp. 927), and defendants appeal.  Reversed, and new trial ordered upon questions of law only.

The action was commenced on the 10th day of August, 1905, to recover upon a bond of $1,000, executed by the defendants Gannon and Connette as principals and the defendant company as surety, to the plaintiff, conditioned, among other things, that a street surface railroad through and along certain streets in such village should be completed and in operation on or before January, 1905, in accordance with the conditions of a consent or franchise granted by the trustees of the plaintiff on the 27th day of December, 1902, to one G. Adolph Manz, and by him assigned to Gannon and Connette on the 30th day of December, 1902, the day when the bond in question was executed and delivered by them.  The defendants urge that they are not liable upon the bond, on the ground that the consent or alleged franchise, having been given or granted to an individual, and not to a railroad corporation, was void, and, therefore, that the bond is without consideration, and likewise void.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles E. Spencer, for appellants.
O. M. Reilly, for respondent.

McLENNAN, P. J.  The only question presented by this appeal is whether or not a consent or franchise given by the local authorities of a municipality to an individual to construct and operate a surface railroad through and upon the streets in such municipality has any validity, so as to confer any rights upon such individual.  Clearly, if

such consent or franchise is void, and no rights are conferred thereby, there is no consideration for an agreement to carry out and perform the provisions and conditions thereof.

It is elementary, as stated in the first point in appellants' brief, that the authority to use the public streets of a municipality for railroad purposes is a franchise proceeding from the state, and the municipality has no power in respect thereto, except such as is expressly given by statute, and then only in the manner and upon the conditions prescribed. In the case of Beekman v. Third Avenue R. R. Co., 153 N. Y. 144, 152, 47 N. E. 277, 278, this principle is stated by Judge Brown in no mistakable language. He says:

"The authority to make use of the public streets of a city for railroad purposes primarily resides in the state, and is a part of the sovereign power, and the right or privilege of constructing and operating railroads in the streets, which for convenience is called a 'franchise,' must always proceed from that source, whatever may be the agencies through which it is conferred. The use or occupation of the streets for such purposes, without the grant or permission of the state, through the Legislature, constitutes a nuisance, which may be restrained by individuals injuriously affected thereby. Fanning v. Osborne, 102 N. Y. 441, 7 N. E. 307. The city authorities have no power to grant the right, except in so far as they may be authorized by the Legislature, and then only in the manner and upon the conditions prescribed by the statute. Davis v. Mayor, etc., 14 N. Y. 506, 67 Am. Dec. 186; Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314; People v. Kerr, 27 N. Y. 188."

A like question arose in the case of Potter v. Collis, 156 N. Y. 16, 30, 50 N. E. 413, 415, in which Judge Gray, writing for the court, said:

"The resolution of the common council, in 1851 was void, inasmuch as it purported to do something not within the powers of that body. It undertook to authorize the laying of railroad tracks in the city streets and avenues, and thus to subject them to new uses. But the title of the municipal corporation to the public streets was held in trust for the public, and the power to regulate those uses was vested solely in the Legislature. It might delegate that power, as any other appropriate power, to the municipal corporation; but, without such delegation, any such act by the corporation, for not being within the strict or implied terms of its chartered powers, would be invalid. * * * The situation of the city corporation, in the machinery of the state, was that of a mere agency, possessing no inherent and independent authority to create rights in others which affected the public interests. It undertook to grant a right which, if effective, operated to invest private parties with an exclusive interest in its streets. This the Legislature, possessing a supreme authority over the public territory within constitutional limitations, could, of course, do; but to attribute such a power to the municipal corporation would be foreign to the concept of such an administrative agency of government."

In that case it was held that the resolution of the common council of the city of New York, which assumed to authorize certain individuals to construct a railroad in specified streets and avenues which make up the greater part of the main line of the present Eighth Avenue Railroad Company subsequently organized by such individuals, was void and beyond the power of the common council, whether considered as a grant of a franchise or a license. It has been uniformly held by the courts of this state, whenever the question has been presented, that a municipality has no power or authority to give a consent or grant a franchise which will impose an additional burden upon its streets, unless authorized so to do by the Legislature. In the case at bar we can find no legislative authority which conferred upon the

plaintiff the right to grant to G. Adolph Manz, his successors and assigns, the right to construct, maintain, and operate a surface railroad upon its streets. The consent or franchise in question was given or granted to an individual. There was no binding agreement upon the part of such individual to form a corporation which should take or receive such grant; and, indeed, it appears that the grantee never attempted so to do, but, instead, sold or assigned the consent or franchise so given to him to others, the defendant principals in this case.

Section 90 of the railroad law (Laws 1890, p. 1108, c. 565), pertaining to street surface railroads, provides:

"The provisions of this article shall apply to every corporation which, under the provisions thereof, or of any other law, has constructed or shall construct and operate, or has been or shall be organized to construct or operate, a street surface railroad, or any extension or extensions, branch or branches thereof, for public use in the conveyance of persons and property for compensation, upon and along any street, avenue, road, highway or private property, in any city, town or village, or in any two or more civil divisions of the state, and every such corporation must comply with the provisions of this article."

Section 92 of the same article provides how and in what manner the consent of the local authorities of a village or other municipality may be obtained to authorize the construction of a street surface railroad upon and along its streets. The provisions contained in the other sections of said article are all based upon the idea that such consent or franchise must be given or granted, if at all, to a corporation authorized to construct and operate such railroad. We can find no provision of the law which authorizes a municipality to consent to or to give a franchise to an individual or individuals granting the right to occupy the streets of such municipality for the purpose of constructing, maintaining, and operating a street surface railroad therein. The whole scheme of the legislative enactment would seem to be that such right and such consent can only be conferred upon and given to a corporation, which alone is authorized to construct, maintain, and operate a street surface railroad in the streets of any municipality. To such a corporation alone is given the right of eminent domain. Upon such a corporation alone there are imposed certain duties and obligations. In all the provisions relating to the construction, maintenance, and operation of such a railroad, a corporation alone is spoken of. The duties and obligations are imposed upon it as a corporation, and, except that such rights are to be exercised only by a corporation, many of the provisions of the statute would seem to be nugatory and impossible of enforcement.

Upon this branch of the case we conclude that there is no statutory authority which empowered the plaintiff to give the consent or grant the franchise which it did to G. Adolph Manz, his successors and assigns, and that such attempted consent or franchise was absolutely void, and that he and his assigns acquired no right or rights thereunder. The logic of the situation leads us to believe that this conclusion is correct. If the contention of the respondent is correct, then it is competent for a municipality to grant to an individual a consent or franchise to occupy its streets upon such terms as it may deem proper, and then such individual is at liberty to sell or barter away such con-

sent or franchise to the highest bidder, irrespective of the wishes of the municipality in the premises. It would seem reasonable that, when such consent or franchise is given to occupy its streets, avenues, and public places, it should at least know who is to exercise the rights given by such consent or granted by such franchise—should be entitled to know whether or not the person or corporation accepting such consent or franchise is reasonably able to perform and carry out its conditions, irrespective of the security given by a paltry bond of $1,000. But, if the contention of the respondent is right, such consent or franchise may be given to an individual upon conditions not to be carried out and performed by him, but such consent or franchise may be sold by the grantee to strangers to the municipality, and of whom such municipality has no knowledge or means of knowledge as to their character or responsibility. This suggestion only emphasizes the proposition that such consent or franchise can only be granted by a municipality in the manner specified by the statute, viz., to a corporation organized in pursuance of and in accordance with the laws of the state, and which as such may be held accountable for any failure to perform its corporate duty in the premises. We do not think it was intended by the Legislature of this state that a new avenue of "graft" should be opened up, viz., that a municipality might grant to an individual or individuals the right to occupy its streets for railroad purposes, and then that he or they should be in position to sell such right or grant to the highest bidder, and the grantee thus become relieved from all obligation in the premises, provided another gave a bond which assumed to carry out the provisions contained in the original grant or franchise.

We appreciate that in this case it was probably understood that G. Adolph Manz would form a corporation such as would be capable of accepting and taking the franchise sought to be conferred by the plaintiff, and of constructing and operating a railroad thereunder; but the alleged franchise imposed no such obligation upon him or upon his assigns. When all is said and done, the franchise in question simply authorized an individual to construct, maintain, and operate a railroad upon certain streets of the plaintiff. No corporation had been formed for that purpose, and none has since been formed. We conclude that the consent or franchise thus given to the individual was void, and conferred no rights upon him or his assigns, and, therefore, that the bond given by the defendants, conditioned for the doing of the things specified in said void consent or franchise, was also void, and not enforceable.

We think these views in no manner conflict with the decision in Parker v. Elmira, C. & N. R. R. Co., 165 N. Y. 274, 59 N. E. 81. There the question was presented as to whether or not private individuals owning property interests in certain streets might assign or convey such interests as they owned to an individual, to be by him assigned to a corporation thereafter to be formed. We can see no analogy between the two cases. In the Parker Case, supra, the question involved was simply whether consents given by abutting property owners upon a street to an individual might be thereafter by him trans-

ferred to a corporation. In such case the property owners had a right to relinquish the right, title, and interest to the property in the street and to whomsoever they pleased. The decision in that case cannot be regarded as authority for the proposition that a municipality may grant a right to an individual to operate a railroad upon such street, which, under the statute, it is incapable of doing. The same suggestion may be made as to the decision in the case of G. & W. Ry. Co. v. N. Y. C. & H. R. R. Co., 163 N. Y. 228, 57 N. E. 498. As pointed out by the learned trial judge, under the provisions of the statute, upon a foreclosure sale, a railroad company may be purchased by an individual and operated by him; but we think such power results solely from the provisions of the statute in that regard. We can find no authority for the proposition that a municipality may grant to an individual a right or franchise to construct, maintain, and operate a street surface railroad upon its streets, avenues, and public places.

The conclusion is that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

Judgment reversed, and new trial ordered, with costs to appellants to abide event, upon questions of law only; the facts having been examined and no error found therein. All concur, except SPRING and ROBSON, JJ., who dissent in an opinion by SPRING, J.

SPRING, J. (dissenting). The decision states the facts, which were agreed upon. It is plain it was the expectation of all parties that a corporation was to enjoy the franchise and build and operate the railroad. At the outset it provides:

"Whereas, G. Adolph Manz, for himself, and his assigns, a street surface railroad corporation hereafter to be organized."

And the language of the resolution of the board of trustees of the village, and which is incorporated in the agreement, is:

"Resolved and determined, that consent be and the same is hereby given, pursuant to law, to the said G. Adolph Manz, his assigns and successors [thereafter referred to as the company], to construct, maintain, and operate a street surface railroad," etc.

In providing for the construction, equipment, and operation of the railroad, the term "railroad company" or "company" is used invariably. The consent was—

"given upon the following express conditions: First. That the provisions of article 4, chapter 565, of the railroad law of 1890, and acts amendatory thereof and pertinent thereto, shall be complied with."

This article is the one in the general railroad act providing for the construction of street surface railroads. The agreement also provided:

"That said road shall be completed from the city line of the city of Syracuse, to and through the village of Phœnix, and in operation, on or before January, 1905."

The object was, apparently, to construct the road in connection with the Syracuse street railway system. This is the requirement as to the bond:

"That accompanying the acceptance of this franchise said company shall give to the village of Phœnix a bond of one thousand dollars to commence the construction of its road and to complete the same as herein specified."

It is clear, therefore, there was no intention that Manz individually was to receive the benefit of this franchise or to construct the railroad. The whole scheme as outlined in the agreement indicates that it was the intention that he was a mere medium of transfer to an existing corporation or one to be thereafter organized. This construction of the contract is further fortified by what the parties did. The agreement was executed December 22, 1902, and the franchise immediately accepted by Manz, and within three days he assigned it to Gannon, Connette, Conderman, and McClymonds, who were the president, general manager, and directors of the Rapid Transit Railroad Company of the city of Syracuse. On that day the defendants executed the bond in suit. The corporation contemplated by the agreement was never organized, and the railroad has not been constructed.

The interpretation of an agreement of this kind is governed by the same rules as any other. There is no mystery about it. The intention of the parties is the pole star. It is obvious the board of trustees were not intending to violate the law. The men composing this board were parting with a valuable franchise for the purpose of securing a street railroad in the village. They expected the requirements of the statute were to be observed and a corporation organized. We are not to assume that Manz, or the principals upon the bond, intended otherwise. They knew of the statutory impositions preliminary to the construction of the railroad, and we are not to suppose that they were trifling with these trustees. Manz was, therefore, the go-between, the conduit, and the franchise was not absolutely void in his hands. Had he transferred it to a duly organized corporation at any time within the period stipulated in the agreement, its title would have become effective, and it could have started the railroad in compliance with the agreement. In Parker v. Elmira, C. & N. R. R. Co., 165 N. Y. 274, at page 280, 59 N. E. 81, at page 83, the court say:

"The fact that at the sale of the railroad under the foreclosure judgment in March, 1884, the property was conveyed to two individuals, does not affect the right in question, nor interrupt the transmission of the franchise through the successive transfers. * * * While it is doubtless true that natural persons cannot exercise the franchises which the state has conferred upon railroad corporations, there is no reason why they cannot be the conduit for transmitting them to another corporation in the manner provided by law. They may bid in the property at the foreclosure sale, including the franchises, and hold and transmit it intact to a corporation authorized to accept them."

In Geneva & Waterloo Ry. Co. v. N. Y. C. & H. R. R. Co., 163 N. Y. 228, 57 N. E. 498, where consents to the construction of a street railroad of the abutting owners were given to the individual promoters of the project, the court uses this language in commenting upon the effect of these instruments:

"It is common practice, and perhaps common prudence, for the projectors of a railroad to employ parties in advance to procure rights of way, consents, or like privileges to be used after the incorporation. The fact that the railroad acquires such rights through an intermediary by assignment, instead of directly from the property owners themselves, does not affect their validity. What the Constitution and the statute requires in such cases is simply the consent of the property owner that the highway through his property may be burdened with another easement in the form of a railroad, and when such consent is fairly and in good faith given to one interested in the railroad, and by him transferred to the corporation, we are unable to see why it should not be treated and considered as valid as if it ran in terms to the railroad itself."

The point is that, in view of what was intended by the parties, the contract with Manz was not void; and before the defendants who participated in the agreement, comprehending its scope, can be heard to say the bond is invalid, they must establish that the franchise was of no validity from its inception, and could never be galvanized into life by assignment to a proper corporation. The defendants obtained what might have proved a valuable franchise. It prevented for two years any competing company entering the village with its railway. The board of trustees could not well grant another franchise with this one existing, and which could be made effective in a day by a transfer to a body corporate as designed by the board. In the light of what was intended, I think the defendants cannot now challenge the legality of the agreement which at one time they were swift to sanction.

The judgment should be affirmed, with costs.

ROBSON, J., concurs.