upon and incident to it (Matter of Grade Crossing Commission, 64 App. Div. 71, 71 N. Y. Supp. 674); and, since the defendant Blecher acquired the entire interest of the firm by such conveyance and purchase, he is entitled to the entire award.

The plaintiff makes the further contention that the allegations of the separate defenses are defective, because the averment that Abelman "purchased" the right, title, and interest of the plaintiff is a legal conclusion, and not an allegation of fact. As facts may be pleaded according to their legal effect at the option of the pleader, instead of averring the facts as they actually exist (McKee v. Jessup, 62 App. Div. 143, 70 N. Y. Supp. 796), such allegation is sufficient (Prindle v. Caruthers, 15 N. Y. 425, 431). In the case last cited the complaint alleged that the contract in controversy became the property of the plaintiff by purchase, without stating when, from whom, or upon what consideration, and it was held that such defect was not of such a substantial nature as to be available upon a demurrer, that such allegation tendered the issues as to the matter, and that the remedy was by motion to make the complaint more definite and certain.

The plaintiff further argues that the separate defense is also defective, because it fails to state when the purchase of the plaintiff's interest was made by Abelman. As I construe the language of such separate defense, not only did the dissolution of the copartnership take place on or about the 30th day of December, 1899, but that, as a part of the transaction had on that day, the plaintiff's interest in the copartnership assets was purchased by Abelman.

My conclusion, therefore, is that the demurrer should be overruled, with costs, with leave to the plaintiff to withdraw the demurrer.

---

TROJAN RY. CO. v. CITY OF TROY et al.

(Supreme Court, Appellate Division, Third Department. March 23, 1908.)

1. MUNICIPAL CORPORATIONS—FRANCHISE TO USE STREETS—STREET RAILROADS —CONSTRUCTION AND MAINTENANCE.

A street railroad may be constructed and maintained only by a railway corporation with power to build and maintain a road in the city. If its charter does not cover the proposed streets, there must be filed in the office where the certificate of incorporation is filed a statement of the names of the streets upon which it is proposed to build the road, and the consent of the local authorities and property owners must be obtained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1465.]

2. SAME—SELLING STREET RAILWAY FRANCHISE—RIGHT OF BIDDERS.

Laws 1898, p. 373, c. 182, § 19, as amended by Laws 1906, p. 88, c. 52, relating to the government of cities of the second class, provides that the city, under proper regulations for its protection, may sell a franchise at public auction to the highest bidder upon due notice, which sale must be approved by the board of estimate and apportionment. *Held*, that the personnel of the bidders is immaterial, but, if there is a compliance with the terms of the sale, the bids must be acted upon, and the highest bid accepted, subject to the approval of the board; and hence, where an individual was the highest bidder, he was entitled to the franchise, though he was himself unable under the law to construct and maintain the road,

and he could either organize a corporation to construct and maintain it, or could assign his bid to another, who would do so.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1465.]

Chester and Sewell, JJ., dissenting.

Appeal from Special Term.

Action by the Trojan Railway Company against the city of Troy and others. From an interlocutory judgment sustaining demurrers to the complaint, and an order denying a motion to continue a peremptory injunction, plaintiff appeals. Reversed, and judgment directed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Thomas O'Connor, for appellant.

George B. Wellington for appellees city of Troy and others.

John E. MacLean (Lewis E. Carr, of counsel), for appellee United Traction Co.

JOHN M. KELLOGG, J. The plaintiff alleged that by an ordinance the defendant city provided for the sale at public auction, to the highest bidder, of the franchise to construct, maintain, and operate an electric street surface railroad on certain streets in said city, the advertisement of said franchise for sale, and that one Joseph A. Powers, a resident of the city, attended said sale and bid for such franchise, and was the highest bidder therefor; that the United Traction Company, the other bidder, protested against the bid of said Powers, claiming that he was not capable of constructing, maintaining, and operating said railroad, and therefore that his bid was void, and that it was therefore the highest bidder; and that while the matter was under consideration by the city authorities the plaintiff was organized as a street surface railroad and the bid of said Powers was assigned to it, notice of which was given to the city authorities, and thereafter the bid of said Powers was rejected and the franchise was struck off to the United Traction Company. Plaintiff sought to enjoin the city authorities from granting the franchise to the traction company, and obtained a preliminary injunction for that purpose.

We may assume, without deciding, that a private individual cannot maintain and operate a street railway for public use in a city. Several things are necessary in order that such a railway may be constructed and maintained: (1) A railway corporation with power to build and maintain a road in the city. (2) If the charter of the company does not cover the proposed streets, there must be filed in the office where the certificate of incorporation is filed a statement of the name and descriptions of the streets, avenues, etc., upon which it is proposed to construct and maintain the road. (3) The consent of the local authorities. (4) The consent of the property owners. Neither bidder at the sale possessed all of these qualifications, and therefore neither of them was qualified to build and maintain the railroad. Either of them, if successful, must subsequently become qualified to build and operate the road, or assign the bid. The personnel of the bidder is immaterial. If a railroad company is the successful bidder under a notice like the

one here, it may be insolvent and utterly incapable of building and maintaining a road, and may be in the hands of unworthy and unfit men. Nevertheless, if it complies with the terms and conditions of the sale, it becomes a bidder, and its bid must be acted upon. The statute treats the franchise as property, and upon a sale of property offered generally the bidder is only required to comply with the terms of sale, or he may sell and assign his bid to one who will do so.

Section 93 of the railroad law (Laws 1890, p. 1109, c. 565) provides for the sale of the local consent, in cities having 125,000 inhabitants or more, to the bidder who will agree to give the city the larger percentage of the gross receipts, and provides that such bidder must be an incorporated railroad company and file a bond for the performance of the agreement. The defendant is a city of the second class; the only other second-class cities then being Albany, Syracuse, and Rochester, in each of which all of the railroad systems were operated by a single company. With but one railroad company in each second-class city, the "White Charter," so called (chapter 182, page 373, of the Laws of 1898, as amended by chapter 52, p. 88, Laws 1906), was passed, and provided at section 19, with reference to a sale of such a franchise or consent, that under proper regulations for the protection of the city it should be sold at public auction to the highest bidder upon due notice. The statute would seem to promise something to the taxpayers which it clearly did not grant, if it was intended to put them to the expense of publishing the notice of sale of the franchise to the highest bidder, when that sale was limited to one bidder, which clearly, without competition, could fix its own price. Upon this construction of the statute the publisher of the notice at the expense of the city is the only one who could be benefited by the provision of the statute. We cannot assume that this provision was inserted for that purpose. It treated the franchise as property, which the city owned and which it may sell in the manner best calculated to bring the best price for the benefit of the taxpayers of the city. This is not an unreasonable construction of the statute, and the public good can receive no detriment from such a construction. The public can gain no benefit from the act, except from such a construction. Under the statute the disposition of the franchise is to be made under proper regulations for the protection of the city, and it must subsequently be approved by a resolution of the board of estimate and apportionment. If the city in this case has not properly protected itself, it is its own fault; and, should it prove that the present terms are in any way improper, the public interests may be protected by a rejection of the bid by the board of estimate and apportionment, without whose approval, after the bidding, the franchise cannot be granted.

It was held in G. & W. Ry. Co. v. N. Y. C. & H. R. R. R. Co., 163 N. Y. 228, 234, 57 N. E. 498, that the consent of property owners may properly be given to an individual and by him assigned to a corporation, and that the corporation thereby has valid consents, and in the city of New York, where the sale can only be made to a duly incorporated railroad corporation organized to construct, maintain, and operate a street railroad in the city, a company may be the successful bidder, although the Railroad Commission has denied it the certificate of necessity and convenience, and it thereby is not capable of building and

maintaining the railroad. People ex rel. Depew Railroad Co. v. Com'rs, 4 App. Div. 259, 38 N. Y. Supp. 528, 861.

It was held in Parker v. Elmira C. N. R. R. Co., 165 N. Y. 274, 59 N. E. 81, that an individual may purchase a railroad franchise and property, and transmit the same unimpaired to another railroad company; the court saying at page 281 of 165 N. Y., and page 83 of 59 N. E.:

"While it is doubtless true that natural persons cannot exercise the franchises which the state has conferred upon railroad companies, there is no reason why they cannot be the conduit for transmitting them to another corporation in the manner provided by law."

If a natural person can purchase such franchise of a road completed and in operation, and transmit it unimpaired to a company which is capable of exercising it, it is difficult to see why a natural person cannot purchase the consent of the city, or the "franchise," as it is called, for a road to be constructed, and transfer it unimpaired to a company which is capable of exercising the franchise.

It is suggested that an individual who is a successful bidder may hold the franchise until it is forfeited by the lapse of time, and thus tie up the enterprise and prevent the city from having a railroad. A bid by a corporation is subject to the same criticism. Neither can do it if the ordinance authorizing the sale properly provides for the protection of the city. But it is said the successful bidder becomes obligated to build the railroad within the time limited. If that is so, it means that the successful bidder must qualify himself to build the road, and build it within the time, or cause the road to be built. The railroad company must see that its corporate powers are extended over the streets, and that it gets the proper consents and otherwise complies with the statute, or cause its assignee so to do. An individual bidder becomes obligated to form a corporation with powers extending over the streets, and to get the necessary consents from the property owners and do the other acts contemplated, or to assign his bid to some one who will carry out its terms. In one case, we have the obligation of a railroad company that the road will be built; in the other, we have the obligation of an individual that the road will be built. Either or both bidders may be absolutely irresponsible, and the obligation worthless. The statute apparently had in contemplation all these things, and enables the city to protect itself and make such reasonable conditions in the terms of sale as are necessary to fully protect it. That seems to be the only way in which the rights of the public can be protected. The attempted acceptance of the defendant's bid was therefore illegal, as it was not the highest bidder, and the city authorities may properly be restrained from granting the proposed franchise to it. Powers having assigned his bid to the plaintiff, it should now be treated as the bidder, and stands as the highest bidder, and is entitled to the franchise, subject, however, to the approval by a resolution of the board of estimate and apportionment.

In Village of Phœnix v. Gannon, 123 App. Div. 93, 108 N. Y. Supp. 255, it was held that under section 92 of the railroad law a natural person could not acquire a franchise to construct a street surface railroad in a village; but we have seen that the rights of the parties in this case depend upon the proper construction of section 19 of the

White charter, so called. That case is not, therefore, an authority against the position here maintained.

The interlocutory judgment and the order should therefore be reversed, with costs to the appellant, and judgment ordered for the plaintiff as above, with costs, with the right to the defendants within 20 days to withdraw the demurrers and answer upon payment of such costs. All concur, except CHESTER and SEWELL, JJ., who dissent.

CHESTER, J. (dissenting). The only question brought up for our consideration is whether an individual can lawfully bid in a franchise to operate a surface railway in the streets of the city. At the time of making his bid in this case Powers stated that it was made by him as an individual, and he did not claim to represent any corporation authorized by law to construct and operate street surface railways. The statute under which the franchise was put up for sale is section 19, c. 182, p. 373, of the Laws of 1898, known as the "Act for the government of cities of the second class," which provides that an ordinance authorizing the sale of a franchise must provide for its disposition at public auction, after public notice of at least three weeks, to the "highest bidder," and that such sale shall not be valid or take effect unless subsequently approved by resolution of the board of estimate and apportionment.

Both parties agree that under the statutes the operation of street surface railways is confined to corporations, and even before a corporation may construct such a railroad it must have, first, the consent of the Public Service Commission (formerly the Board of Railroad Commissioners), under section 59 of the railroad law (chapter 565, Laws 1890, as added by Laws 1902, p. 1395, c. 676); second, it must procure a franchise from the municipality having control of the streets proposed to be occupied; and, third, it must have the consent of the property owners on the streets to be used. So that, even if an individual was entitled to bid for the franchise upon a public sale thereof, it would avail him nothing, for the reason that he could not lawfully get the consent of either the Public Utilities Commission or of the property owners abutting on the streets, for neither of these consents would have any force if given to an individual, as he could never lawfully construct or operate the road. This is a question, too, in which the public have an interest, as well as the corporation or the individual concerned; for, when the municipal authorities grant a franchise for the operation of a railway in the streets, it is presumed that it is done for the purpose of having such a railway constructed therein, and it would be an idle ceremony to grant or sell the franchise to one who could not lawfully build the road. Therefore the public desires and needs would not be met or fulfilled. If an individual can lawfully take a franchise on a public sale thereof, it would at once become private property in his hands, and so long as he held it as such it would be removed from public control, and would be merchandise in his hands for private gain, instead of for public weal.

It seems to me clear that, when a public franchise is authorized to be sold to the "highest bidder," it means to the highest qualified bidder —that is, to a bidder qualified by law to exercise the franchise offered

for sale; otherwise, the public interests and the railway corporation involved must inevitably suffer whenever an individual sees that by becoming a bidder on such a sale a personal advantage can be gained for himself. It was said in Kent v. Common Council, 94 App. Div. 529, 88 N. Y. Supp. 37, by Chase, J.:

"Where a franchise is granted to build a railroad, it imposes upon the company to which it is granted an obligation to build the road."

It would be useless to grant a franchise to an individual, for the simple reason that under the law he could not fulfill the obligation to build. This would seem to indicate that only a corporation authorized to build could properly bid upon a franchise.

It is said that in each of the cities of the second class, there is but a single trolley company, so that, if an individual cannot bid, there would be practically no competition in the case of the sales of public franchises. This, however, is not of much moment, in view of the fact that the municipal authorities under the law have the right to make such proper regulations for the protection of the city as the common council may impose, and no bid is effective unless subsequently approved by a resolution of the board of estimate and apportionment (section 19, aforesaid, of charter of second-class cities). This provision, I think, was inserted for a purpose, and enables the municipality to protect itself from the monopoly or greed of any corporation, as it apparently did in the case in question, where there was a provision inserted in the terms of sale that no bid less than $7,500, besides the cost of advertising, would be received.

I can conceive of no benefit to accrue to the public from the construction given to the statute in the prevailing opinion. Whatever benefit may come from any increased competition afforded by such construction will be more than offset, in case of the building of the new road by another company, by the requirement from the public of a double fare for riding over the lines of two companies, instead of a single fare for covering the same distance in the cars of a single company. Experience has demonstrated that the public is much better and more cheaply served where a single company operates all the railways in a city than where two companies occupy the field, for the reason that in the one case a liberal use of transfers is compelled by law, which cannot be required in the other.

The views here expressed find support in Village of Phœnix v. Gannon, 123 App. Div. 93, 108 N. Y. Supp. 255, where it was held that a grant of a franchise by a village to an individual to operate a street surface railroad upon its streets was void.

I think the judgment and order should be affirmed, with costs.

SEWELL, J., concurs.