THE VILLAGE OF PHŒNIX, Appellant, v. WILLIAM P. GANNON et al., Respondents.

**Railroads** — franchise to construct and operate a street railroad may be granted to an individual.

Although the Railroad Law contemplates that railroads are generally to be constructed and operated through the medium of corporations organized for that express purpose, a municipality can grant a franchise to an individual for the construction and operation of a street railroad, and a bond given to secure performance of a duty which is coupled with the right granted is valid.

*Village of Phœnix* v. *Gannon*, 123 App. Div. 93, reversed.

(Argued May 12, 1909; decided June 18, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 28, 1908, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury and granting a new trial.

Prior to December 27th, 1902, one G. Adolph Manz made application in writing to the board of trustees of the plaintiff, the Village of Phœnix, for permission to construct a street surface railroad in the streets of the village. Notice of the application was duly published in two newspapers, as required by section 92 of the Railroad Law (L. 1890, ch. 565), and on the date mentioned a consent or franchise was granted to. Manz, " his assigns and successors (hereafter referred to as the company) to construct, maintain and operate a street surface railroad" upon certain designated streets and public places of that village. This franchise provided, among other things, that the road should be completed from the city line of the city of Syracuse to and through the village of Phœnix on or before January, 1905. It further provided that accompanying the acceptance of the franchise, "said company" should give a bond of $1,000 to commence and complete the construction of the road as specified.

Manz accepted the franchise, but instead of organizing a

corporation he assigned it to the defendants Gannon and Connette and two other individuals. Thereupon the defendants Gannon and Connette, as principals, and the defendant company as surety, executed a bond to the village in compliance with the conditions of the franchise, and conditioned in the sum of $1,000 for the commencement and completion of the road.

The road was not built and the conditions of the bond were not complied with. The village thereupon brought this action upon the bond to recover the penalty therein fixed. The only defense urged upon the trial was that the franchise was void because granted to an individual instead of a corporation, and that there was no consideration for the bond.

The trial court rendered judgment in favor of the plaintiff. This judgment was reversed by the Appellate Division, which upheld the contention of the defendants, and the plaintiff now appeals to this court, stipulating for judgment absolute in case of affirmance.

*O. M. Reilly* for appellant. The grant of the franchise to Manz and others, a street surface railroad to be incorporated, and the transfer by Manz and others to the defendants Gannon, Connette and others, were authorized by law at the time of such transfer and a good and valid title vested in the assignee. (*Parker* v. *E., C. & N. R. R. Co.*, 165 N. Y. 281; *G. & W. Ry. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. 228; *People* v. *B., F. & C. I. Ry. Co.*, 89 N. Y. 75; *People* v. *O'Brien*, 111 N. Y. 43.)

*C. E. Spencer* for respondents. The board of trustees of the village of Phœnix possessed no statutory authority to grant a franchise for the use of the streets of said village for street railway purposes, except to a street railroad corporation duly organized under the Railroad Law, and the pretended grant to Manz and his assigns was absolutely without authority and conferred no rights. (1 Dillon on Mun. Corp. [4th ed.] §§ 89, 457; *Smith* v. *City of Newburgh*, 77 N. Y. 130;

*Davis* v. *Mayor*, 14 N. Y. 506 ; *Milhau* v. *Sharp*, 27 N. Y. 618 ; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144 ; *Potter* v. *Collis*, 156 N. Y. 16 ; *People's Railroad* v. *Memphis Railroad*, 77 U. S. 38 ; *N. Y. C. & H. R. R. R. Co.* v. *State*, 37 App. Div. 57 ; *Matter of T. F. St. R. R. Co.*, 102 N. Y. 343 ; *Case* v. *County of Cayuga*, 88 Hun, 59.) A consent or franchise of municipal authorities for the use of the streets of a municipality for street railroad purposes made or granted without authority is absolutely void and not merely voidable. (*Potter* v. *Collis*, 156 N. Y. 16 ; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144 ; *Matter of Rhinehart* v. *Redfield*, 93 App. Div. 410 ; *Davis* v. *Mayor*, 14 N. Y. 506 ; *Milhau* v. *Sharp*, 27 N. Y. 611.) The bond upon which recovery is sought, growing out of an illegal contract and consequently resting upon an illegal consideration, and also being conditioned for the performance of an illegal act or thing, viz., the construction of a street railroad without authority and contrary to law, is null and void and no recovery can be had thereon. (*Gray* v. *Hook*, 4 N. Y. 449 ; *Collins* v. *Blantern*, 1 Smith's L. C. [9th Am. ed.] 646 ; *Bruce* v. *Lee*, 4 Johns. 410 ; *Tuxbury* v. *Miller*, 19 Johns. 311 ; *U. S.* v. *Bradley*, 18 Pet. 343 ; *S. C. Bank* v. *King*, 44 N. Y. 87 ; *Newberry Bank* v. *Stegall*, 41 Misc. Rep. 142 ; *Daniels* v. *Barney*, 22 Ind. 207 ; *Thorne* v. *T. Ins. Co.*, 80 Penn. St. 15.)

WERNER, J. For the purposes of this discussion it may be assumed that this action cannot be maintained if the franchise is void. The bond upon which the suit was brought was given to insure the proper completion of the road in accordance with the terms and conditions of the franchise. If the franchise was invalid, there was no consideration for the bond, and both failed to become effective. In seeking to determine the validity of the bond it may properly be considered as an integral part of the one transaction which must stand or fall in its entirety.

The question whether a municipality can grant to an individual a franchise for the construction and operation of a

street surface railroad is not free from doubt, but we are inclined to the view that the question must be answered in the affirmative. Primarily the power to grant franchises in the public streets resides in the state. Municipalities have only such power in this regard as has been delegated to them by the legislature. (*Beekman* v. *Third Ave. R. R. Co.*, 153 N. Y. 144, 152; *Fanning* v. *Osborne*, 102 N. Y 441.) That this sovereign power has been thus delegated is not questioned. The contention of the defendants is that the law delegating this power to the municipalities of the state does not authorize the granting of such franchises to individuals. The statutory regulations on this subject are now incorporated in the Railroad Law (L. 1890, ch. 565), and the question whether the defendants' contention is well founded or not must be determined in the light of the statute. It cannot be doubted that the Railroad Law contemplates that railroads are generally to be constructed and operated through the medium of corporations organized for that express purpose. Corporations thus organized are given the right of eminent domain and many other rights and privileges not possessed by natural persons. But this is far from conceding that an individual may not take and own a franchise to operate a railroad. There are a number of sections in the Railroad Law which indicate in the clearest terms that the right to own and possess such franchises is not confined exclusively to corporations. Pursuant to the first sentence of section 2, "Fifteen or more persons may become a corporation, for the purpose of building, maintaining and operating a railroad, or for maintaining and operating a railroad already built, *not owned by a railroad corporation*, or for both purposes." In section 57 it is provided that "Every *person* or corporation owning, leasing, operating or in possession of a railroad, wholly or partly in this State, shall make an annual report." Section 81 declares that any mortgagee of the property and franchises of a railroad corporation may become the purchaser thereof at foreclosure sale.

Article 6 of the Railroad Law relates specially to street

surface railroads, and in the provisions of its various sections there are indications of a legislative intent to confine the actual operation of such railroads to corporations duly organized for that purpose. Section 91 contains general provisions to that effect. Section 92 prescribes the procedure for obtaining the consent of the local authorities for the construction and operation of a street railroad. Such a consent is practically a franchise, but in the section authorizing the granting thereof there is nothing to suggest that it may not be given to an individual. Section 93 of the same article provides that in cities containing one million two hundred and fifty thousand or more inhabitants, the bidder to whom such a franchise is sold must be a duly incorporated corporation of this State. The plain implication from this prohibition is that in other cities and villages there is no such limitation. Sections 7 and 8 of the Rapid Transit Act (L. 1891, ch. 4) provide that franchises for the railroads to be constructed thereunder are to be granted before the corporations are organized, and the purchasers are required to organize the corporate entities which are authorized to operate.

In considering the statutes which are now a part of the Railroad Law this court has said that "the transfer to an individual may not be expressly authorized by statute, but neither is it expressly prohibited." ( *Woodruff* v. *Erie Ry. Co.*, 93 N. Y. 609, 617.) In the case cited it was held that the lease by a railroad company of its property and franchises to an individual was neither *malum in se, malum prohibitum* or contrary to public policy. In *Geneva & W. Ry. Co.* v. *N. Y. C. & H. R. R. R. Co.* (163 N. Y. 228) the owners of property abutting upon the line of the proposed street railroad had given to individuals the constitutional and statutory consents for the construction of a street railroad in a highway. The validity of these consents was challenged on the express ground that they had been given to individuals. This court sustained their validity upon the opinion of Judge O'BRIEN. in which he said: "The reason urged for condemning these consents was that it would be contrary to public policy and to

the spirit of the law to allow individuals to procure the consents to themselves and then, as they might, sell them to the highest bidder. We think that this is a remote danger at best, but in any event it should not be invoked to destroy consents given and acted upon without some proof that the parties who procured them contemplated their use for purely commercial purposes. * * * It is common practice and perhaps common prudence for the projectors of a railroad to employ parties in advance to procure rights of way, consents or like privileges to be used after the incorporation. The fact that the railroad acquires such rights through an intermediary by assignment, instead of directly from the property owners themselves, does not affect their validity." (P. 235.)

Similar views were expressed in *Parker* v. *Elmira, C. & N. R. R. Co.* (165 N. Y. 274, 280), which was an action to recover a statutory penalty for the collection of excessive fare. The case hinged upon the application of a certain statute under which the railroad company claimed the right to collect the fare charged. . That right was attacked by the passenger upon the ground that the statute in question had been repealed. This court held that the statute remained in force and that the validity of the defendant's franchise had not been impaired by the fact that it had been acquired through the medium of individuals who had been the purchasers at a foreclosure sale. In discussing this point Judge O'BRIEN said : " The fact that, at the sale of the railroad under the foreclosure judgment in March, 1884, the property was conveyed to two individuals, does not affect the right in question, nor interrupt the transmission of the franchise through the successive transfers. * * * While it is doubtless true that natural persons cannot exercise the franchises which the state has conferred upon railroad corporations, there is no reason why they cannot be the conduit for transmitting them to another corporation in the manner provided by law."

. The context of the consent granted by the plaintiff to Manz, " his successors and assigns (hereinafter referred to as the company) to construct, maintain and operate a street surface rail-

road," clearly indicates that Manz was regarded as a mere conduit through whom there was to be a proper transfer to a legally organized corporation. Under the statutes and decisions above cited we think that the transaction constituted the granting of a valid franchise which Manz could have assigned to a corporation thereafter to be formed for the purpose of exercising the franchise, and the conclusion follows that the bond, given to secure performance of the duty which was coupled with the right granted, must also be held valid.

The learned counsel for the defendants argues that this decision will lead to grave abuses, because it will enable individuals to obtain consents which they may use to thwart the efforts of duly organized corporations to build and operate street railroads. The answer is that municipalities can always guard themselves against such possibilities by insisting upon conditions which will insure the exercise of the franchise granted. We think, moreover, that the danger from these anticipated abuses is more imaginary than real. If municipalities in granting such consents will hedge them about with proper conditions, individuals will not rashly or carelessly ask for franchises which they cannot hope to use. In cities of the second class these franchises are now required to be sold to the highest bidder, and if the element of competition in such municipalities is to be eliminated or limited by prohibiting individuals from bidding, that should be done by legislative enactment and not by judicial construction.

The order of the Appellate Division should be reversed and the judgment of the trial court affirmed, with costs to the appellant in both courts.

EDWARD T. BARTLETT, HAIGHT, WILLARD BARTLETT and CHASE, JJ., concur; HISCOCK, J., not voting; CULLEN, Ch. J., absent.

Order reversed, etc.