The road and property of the Third Avenue Railroad Company (street railroad) was sold under foreclosure and at the sale was purchased by a committee of the bondholders. This purchase was made under a plan entered into by the parties in interest, bondholders and stockholders, by which it was agreed that a new corporation should be formed and the securities of the new corporation distributed among the bondholders and stockholders of the old corporation in certain proportions and on the payment of certain amounts in money. The securities — stocks and bonds — called for by the plan of reorganization did not exceed the amount of outstanding securities of the old company and the additional money to be paid to the corporation. After the sale the committee caused to be organized the Third Avenue Railway Company, one of the relators herein. It applied to the public service commission under section 55 of the Public Service Commissions Law (L. 1910, ch. 480; Consolidated Laws, ch. 48) for an order authorizing the securities called for by the reorganization plan. *Page 303 
This application was denied by the commission on the ground that the amount of such securities exceeded the value of the property of the corporation. On certiorari this determination was reversed by the Appellate Division and the matter remitted to the public service commission to proceed in accordance with the opinion of the court. From that order the Appellate Division has allowed an appeal to this court and certified the following questions for our determination:
"1. Have the statutory provisions for the reorganization of corporations embodied in sections 9 to 12 of the Stock Corporation Law been repealed by implication as to railroad corporations by the provisions of the Public Service Commissions Law?
"2. The Third Avenue Railway Company being a corporation duly created under sections 9 and 10 of the Stock Corporation Law, pursuant to a plan of reorganization and agreement of readjustment duly entered into, to take and possess the property and franchises of the Third Avenue Railroad Company, a domestic street railroad corporation, sold by virtue of a mortgage or deed of trust duly executed by said railroad company and pursuant to the judgment or decree of a court of competent jurisdiction, may such street railroad corporation lawfully issue its stock and bonds to the amount specified in such plan and agreement without first securing from the Public Service Commission for the First District an order authorizing such issues pursuant to section 55 of the Public Service Commissions Law?
"3. The Third Avenue Railway Company being a street railroad corporation duly organized under sections 9 and 10 of the Stock Corporation Law, and the issues of stock and bonds proposed to be made by said new corporation being in all respects in conformity with the provisions of sections 9 and 10 of said law and of the plan of reorganization and agreement of readjustment duly entered into pursuant thereto, and the amount of stock *Page 304 
and bonds so proposed to be issued by the new corporation being substantially less than the aggregate of the amount of capital stock of the old corporation issued for cash at par and of valid bonds issued for full value received by the corporation and duly adjudged to be valid obligations by a court of competent jurisdiction, together with interest on said bonds, and new cash to be contributed by stockholders for strictly corporate purposes, may the Public Service Commission for the First District nevertheless lawfully refuse to authorize the said company to issue such stock and bonds to the amounts and for the purposes specified in such plan and agreement, including the discharge and refunding of obligations under such plan and agreement, for the reason that in the opinion of the Commission the present actual value of the property to be acquired by the new or reorganized corporation under said plan and agreement is not equal to the aggregate of the par of the proposed new stock and the market value of the proposed new bonds?
"4. If section 55 of the Public Service Commissions Law applies to the reorganization of a street railroad corporation and to the issue of stock and bonds of the successor corporation duly created under sections 9 and 10 of the Stock Corporation Law in pursuance of a plan of reorganization and agreement of readjustment, were the relators entitled under the facts shown in the record to secure from the Public Service Commission for the First District an order authorizing the issue and the amount of the proposed securities as provided in the plan and agreement?
"5. The Third Avenue Railway Company being duly organized under sections 9 and 10 of the Stock Corporation Law, pursuant to a plan of reorganization and agreement of readjustment duly entered into, to take and possess the property and franchises of the Third Avenue Railroad Company, a domestic street railroad corporation, sold by virtue of a mortgage or deed of trust duly *Page 305 
executed by it and pursuant to the judgment or decree of a court of competent jurisdiction, must such reorganized or successor corporation first obtain the permission and approval of the Public Service Commission under section 53 of the Public Service Commissions Law before it may exercise and enjoy any of the rights, privileges and franchises which at the time of such sale belonged to or were duly vested in the corporation last owning the property sold or its receiver?
"6. The Third Avenue Railway Company being duly organized under sections 9 and 10 of the Stock Corporation Law, pursuant to a plan of reorganization and agreement of readjustment duly entered into, to take and possess the property and franchises of the Third Avenue Railroad Company, a domestic street railroad corporation, sold by virtue of a mortgage or deed of trust duly executed by it and pursuant to the judgment or decree of a court of competent jurisdiction, must such reorganization or successor corporation first obtain the approval of the Public Service Commission under section 54 of the Public Service Commissions Law to the transfer or assignment to it of the franchises and of any right to or under any franchise to own or operate a railroad or street railroad which at the time of such sale belonged to or were duly vested in the corporation last owning the property sold or its receiver, and must it first obtain the consent of such commission under said section 54 to the purchase, acquisition, taking or holding of any part of the capital stock of any street railroad corporation organized or existing under or by virtue of the laws of this state which at the time of such sale belonged to or was duly vested in the corporation last owing the property sold or its receiver?"
The determination of this appeal depends on the construction and effect of certain provisions of the Stock Corporation Law (L. 1909, ch. 61; Consolidated Laws, ch. 59) and of the Public Service Commissions Law. Section 9 of the Stock Corporation Law authorizes the *Page 306 
purchaser on a foreclosure or execution sale of the franchises and property of any domestic corporation to form a new corporation, and prescribes the steps necessary to effect that purpose. Section 10 authorizes the purchasers at such a sale, or the persons for whom such a purchase is made, to enter into a plan or agreement in anticipation of the readjustment of the respective interests of creditors, mortgagees and stockholders of the corporation "for the representation of such interests in the bonds or stock of the new corporation to be formed." It then authorizes the new corporation when organized to issue its bonds and stock in conformity with the provisions of the plan and agreement, and to settle or assume the payment of any debt, claim or liability of the former corporation upon such terms as may be agreed upon, and to establish preferences in favor of any portion of its capital stock, and to divide its stock into classes, but such stock of the new corporation cannot exceed "in the aggregate the maximum amount of stock mentioned in the certificate of incorporation." A brief history of the legislation on this subject may throw some light on the question before us. The General Railroad Law of 1850 (Ch. 140) authorized railroad companies to mortgage their property and franchises. Necessarily a purchaser on foreclosure would have the right to maintain and operate the railroad, of which he could not be deprived. By chapter 282 of the Laws of 1854 such person was authorized to form a new corporation for that purpose. Meanwhile a statute had been passed (L. 1853, ch. 502) by which, in case of a foreclosure sale of a railroad or plankroad, any stockholder of the company could, at any time within six months, pay to the purchaser a share of the price for which the property sold equal to the proportion his stock in the company bore to the whole capital stock and thereupon become vested with the same interest in such road and property. With unsubstantial changes this remained the law until 1874. *Page 307 
During that period unfortunately railroad foreclosures had been common, not only in this state but throughout the whole country, and the common practice had been that upon reorganization after foreclosure, the stockholders and the holders of junior securities were allowed some interest in the new corporation, the stockholders often being required to make some contribution of fresh capital. This course was doubtless dictated by two objects: 1st. To prevent delay and procrastination in the foreclosure proceedings. 2nd. To get fresh capital from the stockholders who would be induced to advance it in the hope of saving some part of their previous investment and which could not be obtained from third parties having no such inducement. Such being the common practice, by chapter 430 of the Laws of 1874 there was enacted a provision for the reorganization of railroad properties sold under foreclosure substantially in the same form as that now provided in the Stock Corporation Law by which the provision is extended to all corporations. In 1907 the Public Service Commissions Law was enacted and amended in 1910 (Ch. 480; Cons. Laws, ch. 48). By section 55 of that act common carriers and railroad corporations were authorized to issue stock, bonds, notes or other evidences of indebtedness when necessary for the acquisition of property and construction and improvement of its facilities, "provided and not otherwise that there shall have been secured from the proper commission an order authorizing such issue, and the amount thereof and stating the purposes to which the issue or proceeds thereof are to be applied, and that, in the opinion of the commission, the money, property or labor to be procured or paid for by the issue of such stock, bonds, notes or other evidence of indebtedness is or has been reasonably required for the purposes specified in the order."
We think that these statutes are not inconsistent; that on the one hand the enactment of the Public Service Commissions Law did not repeal the provisions in the *Page 308 
Stock Corporation Law for the reorganization of the property and franchises of corporations sold under foreclosure, and on the other hand that the provisions of the Stock Corporation Law do not withdraw corporations formed on reorganizations from compliance with section 55 of the Public Service Commissions Law. In other words, the two statutes must be construed together, though parts of the later statute may be inapplicable to cases arising under the earlier.
The first and second questions must, therefore, be answered in the negative.
As to sections 53 and 54 of the Public Service Commissions Act we entertain this view: Section 53 provides that without first having obtained the permission and approval of the proper commission no railroad corporation or common carrier shall exercise any franchise or right under any provision of the Railroad Law or any other law, unless prior to the creation of the board of railroad commissioners (the predecessor in many respects of the public service commissions) the corporation or carrier was entitled to exercise such franchises. Section 54 of the act forbids the assignment or transfer of any franchise to operate a railroad unless the transfer shall have been approved by the public service commission. These provisions have no application to the relator company. The franchise of the Third Avenue Railroad Company was property and could not be destroyed. (People v. O'Brien, 111 N.Y. 1.) The statute empowered that company to mortgage its property and franchises, and under that authority they were mortgaged and sold to the individual relators, who became the purchasers thereof. The right of the bondholders under the mortgage to have the mortgaged property sold in satisfaction of their claims, and the right of the purchasers to the franchises and property bought by them were inviolable. Therefore, no consent could be made a prerequisite to either the transfer or enjoyment of the franchises. It is *Page 309 
true that while the state could not impair the rights of the purchasers to maintain and operate the railroad acquired by them, it might refuse to give them the franchise to be a corporation, or grant it only on such conditions as it might see fit to impose. (Minor v. Erie R.R. Co., 171 N.Y. 566; People exrel. Schurz v. Cook, 148 U.S. 397.) The provisions of the sections referred to, however, are not directed against corporations particularly, but against corporations and individuals alike, and section 53 expressly excepts franchises held prior to the creation of the railroad commission, when the state first required the consent of that commission to the acquisition of the franchise to construct and maintain a railroad. This exception and the inability of the legislature to invade the rights of bondholders or purchasers, manifested in the statute itself, makes it plain that the provisions of these sections were not intended to apply to the case of a corporation formed on the reorganization of a foreclosed railroad.
Questions five and six must, therefore, be answered in the negative.
Holding, as we do, that the relator corporation falls within the provisions of section 55 of the Public Service Commissions Law, we are brought to the question whether under the provisions of that section and those of the Stock Corporation Law, relative to the reorganization of corporations, the commission was justified in refusing the consent applied for because the value of the mortgaged property and the amount of new capital to be invested were less than the amount of securities to be issued by the corporation. We think it was not. The requirement of the Stock Corporation Law is, that the plan or agreement adopted by the parties in interest shall not be inconsistent with the laws of the state, but there is no provision in the Public Service Commissions Law that the securities issued shall in no instance exceed the value of the property. Indeed it contains no express provision *Page 310 
to that effect at all, though doubtless it was intended by the law to prevent the issue of fictitious or "watered" securities, and the Stock Corporation Law (§ 55) forbids the issue of stock or bonds except for money or labor or property at their respective values. As was said by Judge HAIGHT in People ex rel.Delaware Hudson Co. v. Stevens (197 N.Y. 1, 9): "For a generation or more the public has been frequently imposed upon by the issues of stocks and bonds of public service corporations for improper purposes, without actual consideration therefor, by company officers seeking to enrich themselves at the expense of innocent and confiding investors. One of the legislative purposes in the enactment of this statute was to correct this evil by enabling the commission to prevent the issue of such stock and bonds, if upon an investigation of the facts it is found that they were not for the purposes of the corporation enumerated by the statute and reasonably required therefor." (See, also,People ex rel. Binghamton Light, Heat P. Co. v. Stevens,203 N.Y. 7.) The requirement of the statute is that the issue of the securities shall be necessary for the acquisition of the property, and although as a general rule under this requirement, the securities should not be authorized except where the value of the property is equal to the amount of the securities issued, there may be exceptions to that rule. One is found in the statute itself. In the case of the merger or consolidation of two or more corporations it is provided that the capital stock of the corporation formed by the merger shall not exceed the capital stock of the corporations consolidated and any additional sum paid in in cash. Thus, in the case of merger the limit of the amount of stock of a corporation is dependent, not on the value of its property, but on the stock outstanding of the constituent corporations prior to the merger. We think the same rule is applicable to the case of a corporation formed on the reorganization of a foreclosed railroad. *Page 311 
It is not necessary to consider the issuance of the securities of the new corporation as a refunding of the outstanding obligations of the old. It is sufficient to say that the statute authorizes the bondholders, stockholders and creditors to agree upon a plan for the readjustment of their respective interests, and authorizes the new corporation to issue its stock and bonds in accordance with the agreement. A readjustment of the interests of the parties does not contemplate that the new securities shall necessarily be scaled down to the actual value of the property. If this was the contemplation of the statute, the statute would be of little value. The property sold rarely realizes the amount due on the mortgage foreclosed. If the sale price is considered the criterion of value, there could be no plan which would give the holders of stock or of junior securities any interest in the new corporation, while often the bondholders under the mortgage foreclosed might find themselves without the right to obtain any securities of the new corporation in lieu of their bonds. The intent of the statute was to enable the various persons interested in an insolvent or defaulted railroad to agree upon some plan or scheme to take the road out of insolvency and a receivership and make the enterprise a going concern. For this purpose additional money is generally requisite, which, as already said, can be obtained only from those interested in the property, and not even from them unless, as an inducement to advance the money, they are given the opportunity of retrieving their prior investment. In many instances the growth of the community in which the railroad was located and the improvement in business conditions has ultimately justified the advance of new capital, and the benefit and protection of the original investors in the enterprise was also the object of the statute. We do not say that in the reorganization of a railroad the new corporation is authorized to issue securities in excess of those of the company to whose property and franchises it has *Page 312 
succeeded and the new money that may be put in the enterprise. Such a plan would be plainly inconsistent with the spirit of the Public Service Commissions Law against the issue of "watered" stock or bonds, but, up to the limit we have named, the new corporation has the right to issue securities. The determination of the commission to the contrary was, therefore, erroneous.
The third question should, therefore, be answered in the negative and the fourth in the affirmative.
The order of the Appellate Division should be affirmed, with costs.
GRAY, WERNER, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.
Order affirmed.