did not see any cattle loaded in the car prior to the accident, and knew of none being in them, although he had been playing all about the chute and yard most of the forenoon; that, had there been cattle going over the bridge over his head, he would have known it. Aside from some of the train crew, who gave no testimony relating to the matters under discussion, there was no further testimony offered.

It seems clear to me that, considering plaintiff's extremely weak case, so greatly overborne by the testimony of the two Smiths and of the young man, Eagan, all absolutely disinterested witnesses, notwithstanding the labored effort of plaintiff's counsel to make it appear that said witnesses were in some way interested, the jury was led to disregard its duty to render a verdict in accordance with the plain preponderance of evidence, and perhaps through sympathy for an unfortunate youth, who had been injured for life, and feeling that the burden of a money judgment for his benefit would fall lightly upon a wealthy corporation, were prompted to aid him, regardless of legal liability on the part of the defendant.

I think we are compelled to hold that the verdict was against the weight of the evidence, and that the order and judgment appealed from should be reversed, and a new trial ordered, with costs to abide event. I recommend such disposition of the case.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.

---

(158 App. Div. 251.)

PEOPLE ex rel. WESTCHESTER ST. R. CO. et al. v. PUBLIC SERVICE COMMISSION FOR SECOND DIST. OF NEW YORK et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1913.)

1. STREET RAILROADS (§ 55*)—MORTGAGES—POWER TO MORTGAGE.
    The right of a railroad company to mortgage its property and franchises, under Railroad Law (Consol. Laws 1910, c. 49) § 8, subd. 10, carries with it the right to make available the mortgaged property, with every incident necessary to that purpose; hence the law contemplates that a purchaser under the mortgage may organize a corporation to take over the property, and that the purchase price may be financed by the issue of stocks, bonds, or other property securities.
    [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 134; Dec. Dig. § 55.*]

2. CONSTITUTIONAL LAW (§ 93*)—VESTED RIGHTS—MORTGAGES.
    Where a street railway company, under Railroad Law (Consol. Laws 1910, c. 49) § 8, subd. 10, authorizing a railroad company so to do, mortgaged its property and franchises, a limitation by a subsequent statute of the right of a railroad company to capitalize its franchises is invalid as to the mortgagee, as it would be an interference with vested property rights under the mortgage.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 176, 177, 181–185, 190–192, 194–200, 208, 213–224, 236; Dec. Dig. § 93.*]

3. STREET RAILROADS (§ 15*)—CAPITAL STOCK.
    Stock Corporation Law (Consol. Laws 1909, c. 59) § 55, permits stock to be issued for the value of property purchased, and provides that, in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the absence of fraud, the judgment of the directors as to the value shall be conclusive. Public Service Commissions Law (Consol. Laws 1910, c. 48) § 55, requires that there must be an order of the Commission authorizing the issuing, and that in the opinion of the Commission the property to be paid for by the issuing of the stock is reasonably required for the necessary purpose of the corporation. A mortgage covering the property and franchises of a street railway company was foreclosed, and the purchaser, acting for the owner of most of the bonds secured, paid $912,-000 for the property and franchises. The purchaser and associates filed certificates, required by Stock Corporation Law, § 9, and formed a new corporation to take over the property and operate the railroad. The Public Service Commission, under Public Service Commissions Law, § 55, refused to authorize the issue of bonds for the full amount of the purchase price, because the property was not of that value. *Held*, that the capitalization was not restricted to the actual value of the property purchased, but when the good faith of the transaction was established the judgment of the directors was binding on the Commission, and the purchase price was the fair basis of capitalization.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 29; Dec. Dig. § 15.*]

4. STREET RAILROADS (§ 15*)—ISSUE OF STOCK—VALUATION OF PROPERTY.
    Under the Public Service Commissions Law (Consol. Laws 1910, c. 48) authorizing the Commission to fix the value of corporate property, the Commission should not have taken into consideration, in fixing the value of the property of a street railway company for the purposes of a stock issue, the fact that the property was weighed down by a five-cent fare franchise, as the power of the Public Service Commission to fix reasonable rates involves the right to increase as well as to lower, and the rates are to be reasonable to the public and reasonable to the corporation.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 29; Dec. Dig. § 15.*]

5. STREET RAILROADS (§ 15*)—CAPITAL—VALUE OF PROPERTY—SUFFICIENCY OF EVIDENCE.
    Evidence *held* not to sustain a finding by the Public Service Commission that the value of the property of a street railway company was only $400,000.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 29; Dec. Dig. § 15.*]

Certiorari by the People of the State of New York, on the relation of the Westchester Street Railroad Company and another, against the Public Service Commission for the Second District of the State of New York and others, to review the determination of the Commission, refusing to permit the relator street railroad company to issue more than $434,000 of stock. Reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Krauthoff, Harmon & Mathewson (William Greenough and Charles F. Mathewson, both of New York City, of counsel), for relators.

Ledyard P. Hale, of Albany, for respondents.

JOHN M. KELLOGG, J. The Tarrytown, White Plains & Mamaroneck Street Railroad Company's property, rights, and franchises were sold at a foreclosure sale by a judgment of the Supreme Court

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for $882,400.73 to one Sutro, who was acting for the New York, New Haven & Hartford Railroad Company. The New Haven Company was the owner of the greater part of the bonds secured by the mortgage foreclosed. Sutro incurred certain legal and other expenses in connection with the purchase, amounting to $29,622.68, making the net cost of the railroad to him $912,023.41.

The purchaser and his associates filed the certificate contemplated by section 9 of the Stock Corporation Law (Consol. Laws, c. 59), and formed the Westchester Street Railroad Company, and upon proper conveyances under that section that company became vested with and entitled to exercise all the rights, privileges, and franchises which formerly belonged to the mortgagor. The mortgage was made pursuant to subdivision 10, of section 8 of the Railroad Law (Consol. Laws 1910, c. 49), which authorizes a company to mortgage its property and franchises.

The Commission refused to allow stock to issue for the cost of the purchase, and limited the issue to $434,000. It valued the property at $400,000, although it was conceded that its reproductive value, less depreciation, was $445,693.98, and in addition to the value it placed upon the property it allowed $34,000 to cover expenses connected with the purchase and with that application. While it concedes that the purchase was made in good faith on competitive bidding, and that the sale was in all respects fair, it bases its valuation, in a great part, upon the ground that the property was weighed down by a five-cent fare franchise, which was binding upon the purchaser (see Public Service Com. v. Westchester St. R. R. Co., 151 App. Div. 914, 135 N. Y. Supp. 1138, affirmed later in 206 N. Y. 209, 99 N. E. 536), and that by reason of such a rate the property could not be operated at a profit, and that a part of the purchase price represented the franchises, which under section 55 of the Public Service Commissions Law cannot be capitalized.

[1] The laws of the state contemplate that a railroad shall be operated by a railroad company. Trojan Railway Co. v. City of Troy, 125 App. Div. 362, 109 N. Y. Supp. 779; Village of Phœnix v. Gannon, 195 N. Y. 471, 88 N. E. 1066. It was therefore necessary for Sutro to form a new company, by filing the certificate and turning the property over to it. Such a company has no property, and no means with which to finance the purchase, except an issue of stock, bonds, or securities. The mortgaged property, aside from a nominal scrap value, is only salable to or for a railroad company. The statute, therefore, contemplates that a purchaser under the mortgage may organize a corporation to take over the property, and that the purchase price may be financed by an issue of stock, bonds, or other proper securities. Otherwise, the result would follow that the mortgagee would be deprived of a substantial part of the security by reason of the fact that the mortgaged franchises cannot be purchased, as no one is authorized to use and pay for them. The result in this case would be that the New Haven Company, by having made the purchase, is paying nearly $500,000 for the privilege of giving the public the benefit of a railroad service. If it can only receive stock for about

half of the purchase price, because in the opinion of the Commission the property is not worth the price paid, it is in serious trouble, for it cannot in its accounts and reports value the stock at double its par value. If the decision of the Commission is right, there would be no purchaser for railroad property sold upon a mortgage sale, as it would not be known what value the Public Service Commission might put upon the property. The statutory right to mortgage carries with it the right to make available the mortgaged property, with every incident fairly necessary for that purpose, and as the property can be purchased for no practical use other than as a railroad, the right to capitalize the purchase price cannot be impaired, after the mortgage, by a statutory provision declaring that the franchise may not be capitalized.

[2] The company is not asking the capitalization of a franchise; it is asking that it may issue stock for the cost of the property on the foreclosure sale. If we were compelled to hold otherwise, this mortgage having been issued prior to the Public Service Commission Law, it would follow that the limitation of the right to capitalize its franchise would be invalid and ineffectual, as interfering with the property rights under the mortgage.

The capitalization of a corporation is not in all cases restricted to the value of the corporate property as the Commission sees it. "But there is no provision in the Public Service Commissions Law that the securities issued shall in no instance exceed the value of the property. Indeed, it contains no expression to that effect at all, though doubtless it was intended by the law to prevent the issue of fictitious or 'watered' securities, and the Stock Corporation Law (section 55) forbids the issue of stock or bonds except for money or labor or property at their respective values." People ex rel. T. A. Ry. Co. v. P. S. Comm., 203 N. Y. 299, 310, 96 N. E. 1011.

The reasoning of Chief Judge Cullen in that case applies with great force to the questions under consideration. There the Court of Appeals held that the new company was entitled to a capitalization equal to the obligations of the old company which are represented in the new. Chapter 289, Laws of 1912, was intended to change that rule so that the former capitalization would not be the measure for new capital. But if we are right in the position taken, that enactment cannot affect the question involved here. We must construe the statutes enacted since the mortgage as not violating property rights; but if such construction cannot be given, we must still see that vested property rights shall not be impaired by them. By the terms of the latter statute the Commission may fix the fair value, taking into consideration the original cost of construction, duplication cost, present condition, earning power at reasonable rates, and all other relevant matters, etc. Certainly the fact of a sale upon bona fide competitive bids at public sale upon foreclosure of a preceding mortgage are relevant matters to be taken into consideration.

[3] Section 55 of the Stock Corporation Law permits stock to be issued for the value of property purchased, and declares that such stock shall be fully paid, and, in the absence of fraud in the transaction,

the judgment of the directors as to the value of such property purchased shall be conclusive.

Section 55 of the Public Service Commissions Law (Consol. Laws, c. 48) does not destroy that provision.. The two sections may be read in harmony. The latter, in substance, requires, so far as it relates to an issue of stock for property purchased, that there must be an order of the Commission authorizing the issue, stating the amount, the purpose to which it is to be applied, and that in the opinion of the Commission the property to be paid for by the issuing of stock is or has been reasonably required for the necessary purpose of the company. The requirement that the Commission shall approve of the issue and the purposes for which it is issued was undoubtedly to prevent the issue by the company of watered or fictitious securities. An issue of stock for the purchase price at a public sale of necessary property is not watered or fictitious stock, and is not within the evil intended to be guarded against by this section. The authorization of the Commission to an issue of stock does not carry with it the certificate of the state or the Commission that the property back of the stock is worth the amount thereof. It indicates merely that the stock is issued for a proper purpose, and, if for property purchased, that it was an honest purchase, and for the necessary and proper use of the corporation. The franchises purchased, by the authority to mortgage and by the sale, were property, and all of the property purchased was actually necessary for the use of the company. When the good faith of the transaction was established, the honest judgment of the directors, under the circumstances, was binding on the Commission, and the cost to the purchaser was the fair basis of capitalization.

[4] There are other considerations which call for a reversal of the determination. The Commission should have taken into consideration, in valuing the property, its earning power at reasonable rates. The power of the Public Service Commission to fix reasonable rates involves the right to increase as well as to lower rates. The rates are to be reasonable to the public and reasonable to the corporation. City of Troy v. United Traction Co., 134 App. Div. 756, 119 N. Y. Supp. 474; People ex rel. D. & H. Co. v. Pub. Ser. Com., 140 App. Div. 839, 125 N. Y. Supp. 1000; People ex rel. Bridge Operating Co. v. P. S. Com., 153 App. Div. 129, 138 N. Y. Supp. 434; Home Telephone & Telegraph Co. v. City of Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176; Murray v. Pocatello, 226 U. S. 318, 33 Sup. Ct. 107, 57 L. Ed. 239.

[5] The Commission entirely overlooked the physical position of this railroad property with reference to the city of New York, which is growing rapidly towards the territory served, and the rapidly inceasing traffic in the territory, and that the conditions existing at the sale which influenced the bidding are permanent; that the lines of the company connect with the lines owned by other important railway companies to which it is valuable as a feeder, which companies were both active competitors for the property on the sale, and naturally would be competitors upon any future sale. The bidding did not result from the mere whim or fancy or bad judgment of the bidders, but arose from

permanent conditions which made the property valuable. It was proper to deduct from the estimated reproductive cost proper depreciation resulting from age and use; also, if age and use in any way appreciated the value of the property, that should have been considered. The fact that the property was bought as a going concern evidently saved some engineering expenses, interest, and much delay. A settled roadbed, perhaps, is more valuable than one recently graded. The purchase price at public sale is very satisfactory evidence of the value of property, but is not always conclusive. It is evident in this case that in one sense the bidding proceeded upon a false basis. At the first hearing, the evidence of a competent expert, which was not questioned, indicated that the reproductive value of the physical property was $679,567.84. Later, and after the lines had been in part rebuilt, it was found that some of the property, which had been given a substantial value, was practically worthless, and that the property as a whole was not in the condition in which it had seemed to be at the time of the first valuation, and that the actual reproductive value of the property was $445,693.98. In other words, the property was found to be $233,873.86 less valuable than it appeared to be at the time of the bidding. In no other respect can the judgment of the directors of the New Haven Company or the Westchester Company in making the purchase be questioned. But we hold that under all the circumstances the purchaser was entitled to stock for the cost of the purchase.

The order is therefore reversed upon the law and the facts, with costs, and the matter remitted to the Commission for its further action. The finding of fact disapproved of, as against the evidence, is that the value of the property is only $400,000. All concur.

---

QUIRK v. ROCHESTER RY. & LIGHT CO.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1913.)

Appeal from Special Term, Monroe County.