In the Matter of BROOKLYN UNION GAS COMPANY, Petitioner, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, June 9, 1959.

*Cullen & Dykman (Jackson A. Dykman* of counsel; *Edwin F. Russell* on the brief), for petitioner.

*Kent H. Brown, George H. Kenny, Norman Abell* and *Martin L. Barr* for respondent.

FOSTER, P. J. This is a proceeding under article 78 of the Civil Practice Act by which petitioner, The Brooklyn Union Gas Company, seeks to annul a determination of the Public Service Commission refusing to authorize petitioner under section 69 of the Public Service Law to issue 75,000 shares of its par value common stock under a restricted option plan approved by the stockholders of petitioner.

Petitioner, as its name implies, is a public utility gas corporation, incorporated under the Transportation Corporations Law, and hence a stock corporation under section 2 of the General Corporation Law. It may not issue stock except with the approval of the Public Service Commission as specified in section 69 of the Public Service Law, which deals particularly with gas and electric corporations.

For the purposes of this opinion it is unnecessary to recite in detail the provisions of the Restricted Stock Option Plan as proposed by petitioner. The commission did not condemn the plan per se but determined, with one member dissenting, that it was not adaptable to the public utility situation. Suffice it to say, therefore, that the plan proposes to grant to certain officers and key personnel of petitioner, not to exceed 35 in number, options, good for periods not exceeding 10 years, to purchase an aggregate of not to exceed 75,000 shares of petitioner's common stock at a price of not less than 95% of the market value on the day an option is granted, but at not less than the then stated value. No option in excess of 7,500 shares is to be granted to any one person.

The chief purpose of the plan is frankly avowed to attract and hold to service of petitioner able personnel because of an income tax advantage the plan may afford; and because petitioner, without benefit of such a plan, is at a disadvantage in competing for key personnel with other industrial concerns which have adopted similar plans. Section 421 of the Internal Revenue Code (U. S. Code, tit. 26) provides that if an optionee does not dispose of his stock within two years after obtaining an option, or within six months after purchasing the stock, then he would be deemed to have received no taxable income when the stock is transferred to him. Any gains upon a subsequent sale of the stock would be taxed as capital gains. The tax benefit resulting to an employee from such a device over a straight salary increase is manifest. That other industrial concerns are using a similar plan is probably a matter of common knowledge, but in any event the record contains uncontradicted proof of such a practice, and also specific proof that petitioner has lost important personnel because it lacks such a plan. Moreover, so far as stock cor-

porations generally are concerned there is legislative approval for such a practice, and in the absence of fraud the judgment of the board of directors is conclusive as to the value received by a corporation for the issuance of options for the purchase of stock (Stock Corporation Law, § 69).

In its petition to the commission petitioner proposed to apply the net funds to be derived from the issuance of the new securities to the reimbursement of moneys actually expended from income, or from any other moneys in the treasury not obtained from the issuance of stocks, bonds, notes or other evidences of indebtedness. The proof adduced before the hearing commission, and not disputed, was that the sum of $9,300,201.85 was available for reimbursement as the basis for an issuance of capital stock. This has a bearing only on the power of the commission to approve of the proposed issuance of 75,000 shares of stock, as will be indicated later. The commission found in effect that petitioner has a proper basis for issuing securities, hence it would normally follow that as a result of the issuance of 75,000 shares of stock petitioner's capital structure would not be adversely affected.

In making its determination the commission said nothing about its statutory powers in the matter. The essence of its decision is contained in the last two paragraphs of the majority memorandum which reads as follows:

"The propriety of approval by this Commission of a stock issue to implement a plan which would permit of optional purchase and sale by utility personnel, depending upon the personal benefits which might accrue to each individual, of stock which determines control of that regulated utility is questionable. The situation in the extreme would lend itself to manipulation, but it is to be emphasized that no inference is intended as to the instant petition herein or anyone connected with it. In essence the trend toward stock option plans has resulted from the tax structure which confronts all citizens to a greater or lesser degree, and whatever may be the solution, whether through modification or revision of that tax structure or through other means, it is obvious that the device of a stock option plan to give utility personnel remuneration subject to a lesser tax is not adaptable to the public utility situation.

"In the opinion of this Commission, the disadvantages of a stock option plan for a regulated utility far outweigh the advantages. The petition should be denied."

If it be granted that the commission had statutory power to approve of the proposed stock issue as one of the capital purposes specified in section 69 of the Public Service Law we should

say that its determination ought to be annulled, for it is patent on the face of it that a determination based on the language quoted indicates the commission went beyond its administrative function and entered the field of management. Its pronouncement reads like a resolution of a board of directors, and we know of no regulatory principle, statutory or otherwise, that permits the commission to sit as a board of directors.

However, in its answer to the petition in this proceeding the commission raised squarely the issue that petitioner did not establish that its proposed issuance of 75,000 shares of stock pursuant to the provisions of its restricted stock option plan was necessary for any of the purposes stated in section 69 of the Public Service Law, and it so argues here. Irrespective therefore of the commission's memorandum decision this issue is before us, and cannot be ignored.

Section 69 of the Public Service Law authorizes a gas corporation to issue, with the consent of the Public Service Commission, stock and other securities for capital purposes. The purposes specified are: (1) acquisition of property; (2) construction, completion, extension or improvement of its plant or distributing system; (3) improvement or maintenance of its service; (4) discharge or lawful refunding of its obligations; and (5) reimbursement of moneys actually expended from income or from other moneys in its treasury for any of the foregoing purposes except maintenance of service and except replacements. It also expressly provides that the commission shall have no power to authorize the issuance of any stocks or other securities for any purposes other than those enumerated; and moreover the order of the commission authorizing any issue must state that the purposes therefor are not in whole or in part reasonably chargeable to operating expenses or to income. There is no provision in this statute authorizing the issuance of options for the purchase of stock subject to such value, terms and conditions as a board of directors may fix.

On the other hand section 69 of the Stock Corporation Law provides in general terms that no corporation shall issue either shares of stocks or bonds, except for money, labor done or property actually received for the use and lawful purposes of such corporation. The statute was amended by chapter 799 of the Laws of 1954 to provide " Subject to any provision in respect thereof set forth in its certificate of incorporation or other certificate filed pursuant to law, a stock corporation, other than a moneyed corporation, may issue options for the purchase of any of its authorized shares of stock, issued or unissued, for such consideration, value or benefit, and upon such terms and con-

ditions as may be fixed by the board of directors, subject to the requirements of this section and section twelve. * * * In the absence of fraud in the transaction, the judgment of the board of directors shall be conclusive as to the value of property or services received by the corporation for shares of its stock and the adequacy and sufficiency thereof and as to the consideration, value or benefit, tangible or intangible, received or to be received by the corporation for the issuance of options for the purchase from the corporation of shares of its stock and the adequacy and sufficiency thereof.''

One of petitioner's key points is that the foregoing provisions of the Stock Corporation Law was intended to apply to all stock corporations except moneyed corporations, and hence to petitioner which, although a public utility, is a stock corporation; that section 69 of the Public Service Law and section 69 of the Stock Corporation Law are *in pari materia* and must be read together (*People ex rel. Third Ave. Ry. Co.* v. *Public Service Comm.*, 203 N. Y. 299). This is the equivalent of saying that the quoted provisions of the Stock Corporation Law must be read into the same-numbered section of the Public Service Law. The conclusion petitioner draws is that once having determined that a proper basis for capitalization exists, and that petitioner's capital structure will not be adversely affected by the issuance of 75,000 shares of stock under the option plan, the power of the commission is exhausted. Anything beyond that is a matter exclusively for the stockholders and directors of petitioner.

We do not find the problem quite so simple. We agree that the two statutes should be read together where it is possible to do so without violence to the more restricted provisions of the Public Service Law, but beyond that we are not prepared to go. While a public utility may be a stock corporation it is monopolistic in nature and in a more restricted category than an ordinary stock corporation not subject to regulation. Section 69 of the Public Service Law, with its precisely limited details as to the power of a gas corporation to issue stock is proof of legislative distinction. The argument, that if the Legislature intended to exclude a gas corporation from the benefits of a rather free system of options provided in section 69 of the Stock Corporation Law it could easily have said so, is a two-edged affair. It is equally plausible to argue that if the Legislature intended to give such benefits to a gas corporation it could easily have included them in section 69 of the Public Service Law.

In our view the proposed issuance of stock pursuant to the restricted option plan is outside the capital purposes specified in the Public Service Law and hence is prohibited. While the

alleged capital purpose asserted by petitioner is reimbursement of its treasury for previous capital expenditures, this taken at its face value, is only one of its purposes, and quite apparently not the most important one. The more important purpose, as the record exemplifies, for the proposed stock issue is to provide a form of remuneration to certain key personnel by way of options to buy stock at less than its market value. Under any normal system of accounting compensation paid to officers or employees is chargeable to operating expenses and income, and is not a capitalizable expense. We fail to see how the commission can be compelled to make an order stating that the proposed issue is not "in whole or in part reasonably chargeable to operating expenses or income." In this respect the present case differs from those decided differently in other jurisdictions. Viewed in a light most favorable to petitioner the proposed stock issue has a dual purpose — one of reimbursement and one of compensation. These cannot be separated, emanating as they do from a single package proposal, and the commission required to certify one as a capital purpose under the statute and ignore the compensation feature as a matter of management. Viewed in another light there was no basis for the commission finding that the proposed issue was necessary and reasonably required for a proper capital purpose. The whole tenor of the testimony taken strongly indicates that the real purpose of the plan was to offer an attractive form of compensation, which is not a capital purpose. It may well be that the proposed plan is an excellent management proposition. We deal only with a question of power. Absent statutory authority for such a plan recourse must be to the Legislature.

If we are correct in the foregoing analysis we find no constitutional question presented. It is not open to dispute, in our opinion, that the Legislature may restrict public utilities from the exercise of powers that may be bestowed upon other stock corporations.

The determination of the Public Service Commission should be confirmed.

BERGAN, GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Determination of the Public Service Commission confirmed, with $50 costs.